United States District Court
Southern District of Texas
**ENTERED**
January 08, 2019
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHEL THOMAS, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:17-CV-3902 |
| | § | |
| LINK STAFFING, *et al.*, | § | |
| *Defendants*. | § | |

**MEMORANDUM AND RECOMMENDATION**

This case is before the court on Defendant Link Staffing Services' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 21). The court recommends that the motion to dismiss be granted in part and denied in part, as set forth below.

## I.   BACKGROUND

The following factual allegations are gleaned from a careful reading of Thomas's operative pleading in this case.[1] On or about December 14, 2014, Plaintiff was assigned by the temporary staffing agency that employed him, Link Staffing, to work at the Brookshire, Texas, location of a company called Grundfos. His assignment was terminated on October 18, 2016.

Thomas alleges that in September 2015, Grundfos told him there were currently no permanent positions available, but that he would be next in line when one came up. In November 2015, Thomas complained about a safety issue. When two positions became available in February

---

[1] Initially, Thomas filed a "Verified Complaint," along with several attachments from his employment records, EEOC file, and an Affidavit dated August 2016. Dkt. 1. His Amended Complaint, (Dkt. 22-1), contains a shorter and somewhat clearer description of his claims, but asks the court "to still consider the original verified complaint and its parts labeled Affidavit, Complaint, Claimant's Response to Interrogatories, as well as other documents that were in the original verified complaint as part of the amended complaint in whole." Dkt. 22-1 at 1. Usually an amended complaint replaces an original complaint in full, but because Thomas is *pro se* and the court construes his pleading liberally, the court will consider all the documents together as Thomas's Amended Complaint for purposes of the pending motions to dismiss.

2016, Thomas did not get one of them. Instead, Grundfos hired someone named Todd who had recently started working at Grundfos, whom Thomas describes as a "European-American."

Thomas alleges that he complained to "Corporate Grundfos" about discrimination in June 2016. This complaint apparently involved what he felt was a hostile environment based on rampant offensive homosexual comments and innuendo. Thomas further alleges he raised the issue of racial discrimination on October 13, 2016. At that time, Thomas complained that African-Americans and Mexican-Americans were forced to work as temporary employees longer than European-Americans before being offered a permanent, full-time position. He alleges Grundfos's scheme was to offer an African-American or Mexican-American a position only if there was also a position available for a European-American, or if the minority candidate threatened to quit. He believes Grundfos's goal was never to hire more African-Americans or Mexican-Americans than European-Americans.

Link Staffing disciplined Thomas for contacting Grundfos directly with his complaints instead of going through Link Staffing. Link Staffing wrote up an Employee Counseling Report reprimanding Thomas on October 17, 2016. The report says:

> Michael [Thomas] approached Grundfos HR Manager last week about a concern he had with this client. Michael [Thomas] did not follow company guidelines in addressing his concerns. Found on page 3 of the Employee Handbook, 'If, for any reason, you have a problem reporting to work, missing work, or any issues while on assignment - contact Link.' Michael [Thomas] was verbally counseled about this same issue during employee meetings with Link on August 23, September 1 and September 30.

Dkt. 1-2 at 8. The Counseling Report further states that "Michael needs to follow his conditions of employment by recognizing Link as his employer." *Id.* Thomas's handwritten comments in response state that he would like permission to raise his concerns about discrimination with Grundfos corporate, and that he deemed his treatment retaliatory. *Id.* at 8-9.

2

On October 18, 2016, a day after Thomas received the Counseling Report, a Grundfos employee, Chau Nguyen, called employees together at Grundfos and asked if anybody had any issues they wanted to raise with human resources. Thomas stayed silent because he felt like he was being set up as a pretext for termination after the October 17 warning from Link Staffing not to complain to Grundfos representatives. Later that day, Thomas was told that the password had been changed on the computer in the "kitting room," so he could not use it. Still later, there was an issue regarding Thomas's use of a forklift. Thomas continued working that day, but felt things were tense, and he "got the feeling in [his] gut that they were getting ready to end [his] assignment and they were going to use the forklift situation as the reason." Dkt. 1 at 17. As he expected, at 5:40 on October 18, Thomas got a call from Matt Trimble and another man from Link Staffing informing him that his assignment at Grundfos was over. He was told he was still a Link Staffing employee, but they didn't have any work for him at that time. *Id.*

Plaintiff filed a complaint with the Texas Workforce Commission (TWC) alleging discrimination based on age, race, religion, and sex as well as retaliation for filing a complaint of discrimination. Dkt. 1 at 6. The TWC issued a right to sue letter on August 31, 2017. Dkt. 21-2. Plaintiff also filed a charge of discrimination with the EEOC alleging discrimination under Title VII and the ADEA for race, color, sex, and age discrimination, as well as for retaliation. Dkt. 21-3. The EEOC issued a right to sue letter on September 28, 2017. Dkt. 1 at 4. Plaintiff filed this federal lawsuit on December 28, 2017.

## II.   FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). However, the court may take judicial notice of public documents, and may also consider documents a defendant attaches to its motion to dismiss under 12(b)(6) if the documents are referenced in the plaintiff's complaint and central to the plaintiffs' claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir.2007). Here, the court will consider Thomas's original complaint and all attachments (Dkt. 1), the TWC and EEOC documents attached to Link Staffing's motion (Dkt. 21-2, 21-3), and Thomas's Amended Complaint (Dkt. 22-1).[2]

## III.   ANALYSIS

Thomas asserts claims against Defendant Link Staffing (correctly named Stafflink, Inc. d/b/a Link Staffing Services)[3] under Title VII of the Civil Rights Act and Section 1981 for race

---

[2] *See* n.1, supra.

[3] In an attempt to sue the correct party, Thomas's Amended Complaint adds Link Staffing Management LLC and Link Staffing Services as defendants. Stafflink, Inc. d/b Link Staffing Services has appeared in this action and does not

discrimination and retaliation, and under Title VII alone for age discrimination, religious discrimination, sexual harassment/hostile work environment, and associated retaliation. Link Staffing moves to dismiss all claims against it.

Thomas concedes that his claims under Chapter 21 of the Texas Labor Code are untimely. Dkt. 25 at 1. Therefore, Texas Labor Code claims should be dismissed with prejudice. The remainder of Thomas's claims are addressed below.

### A.    Age Discrimination

#### A.1.    ADEA Legal Standards

Title VII protects against discrimination on the basis of "race, color, religion, sex, or national origin," while the Age Discrimination in Employment Act (ADEA) protects against discrimination on the basis of age. *Smith v. City of Jackson, Miss*., 351 F.3d 183, 188 (5th Cir. 2003). Thomas does not mention the ADEA in his pleading. However, ADEA and Title VII discrimination claims are analyzed under a similar framework. *See id.* at 196. Given that Thomas is pro se,[4] the court will not recommend dismissal of his age discrimination and retaliation claims solely on the basis that he did not cite the statute,  and will proceed to analyze his age discrimination claim under Rule 12(b)(6).

To establish a prima facie case of age discrimination, Thomas must show that 1) he is within the protected class; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) he was replaced by someone younger or treated less favorably than similarly situated younger employees because of his membership in the protected age class. *Smith*

---

dispute that it was Thomas's employer at all relevant times and is the proper defendant. Dkt. 21 at 1, n.1. The docket will be corrected to reflect Stafflink, Inc. d/b/a Link Staffing Services as the named defendant.
[4] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("a document filed *pro se* is "to be liberally construed [] and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal citation omitted)).

*v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir.2003) (citations omitted). Under the ADEA, the protected class includes individuals who are at least forty years old. *See* 29 U.S.C. §§ 631(a), 633a(a). *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013).

### A.2.  Thomas's pleading fails to state an ADEA claims as a matter of law.

Link Staffing contends that Thomas's factual allegations are insufficient to state a claim for age discrimination. Thomas's Amended Complaint contains a single sentence alleging age discrimination: "two European-Americas under the age of forty were moved ahead of me in training to become an Assembly Mechanic, Plaintiff was over the age of 40 when this took place." Dkt. 22-1 at 4. His operative pleading contains no further factual allegations related to his claim for age discrimination.

He has failed to allege a viable claim under the ADEA because he does not allege that the two referenced "European-Americans" were similarly situated and given more training *because* they were outside the protected age class.  The mere fact that two younger employees moved ahead of him in training, without an allegation that he was treated differently because of his age, fails to meet the minimum pleading standard for an age discrimination claim. Absent allegations that could establish the fourth element of his age discrimination claim, Thomas has failed to state a claim.

In addition, Thomas has failed to allege facts that could establish the third element of his age discrimination claim.  He has failed to identify an ultimate adverse employment action based on his age. *See Ogden v. Brennan*, 657 F. App'x 232, 235 (5th Cir. 2016) (Adverse employment actions under ADEA, as under Title VII, "include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."). He alleges only that two employees under the age of forty moved ahead of him in training, but those allegations are not sufficient to show that Thomas suffered an adverse employment action. *See Pollak v. Lew*, Civil

Action No. H-11-2550, 2013 WL 1194848, *6 (S.D. Tex. Mar. 22, 2013) (Denial of training is not an actionable adverse employment action), *aff'd* 542 F. App'x 304 (5th Cir. 2013). Further, Thomas fails to allege that he complained to Link about age discrimination. Absent allegations that he engaged in a protected activity by reporting or complaining of age discrimination, Thomas cannot state a claim for retaliation on that basis. In short, Thomas has failed to state a plausible claim for relief under the ADEA and his claims for age discrimination and retaliation should be dismissed.

**B.     Religious Discrimination**

**B.1     Exhaustion of the religious discrimination claim**

Title VII protects individuals from discrimination based on religion, 42 U.S.C. § 2000e-2(a)(1), but requires a plaintiff to exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 376-79 (5th Cir. 2002). A plaintiff's claims in federal court are limited to those that "could reasonably be expected to grow out of the initial charges of discrimination." *Martineau v. Arco Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000). The exhaustion requirement under Title VII is not jurisdictional, but it is a precondition to filing suit. *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 169 (5th Cir. 2018). "Filing a complaint with the EEOC generally satisfies the requirement to file a complaint with the TCHRA, and vice versa, if, as here, the complainant indicates he is dual-filing." *Seghers v. Hilti, Inc.*, No. 4:16-CV-0244, 2016 WL 6778539, at *2 (S.D. Tex. Nov. 16, 2016).

Thomas did not check the box on his EEOC charge indicating discrimination on the basis of religion. Dkt. 21-3. He did, however, check that box on his TWC charge of discrimination and identified himself as Baptist. Dkt. 1 at 6. Thomas contends that he "filed a dual complaint which only required me to file with one of the agencies . . . as long as I made them aware that I was filing dually." Dkt. 25 at 3. The record is not entirely clear on this point. On his TWC charge, Thomas

did *not* indicate that he had also filed with the EEOC. Dkt. 1 at 6. However, it appears that Thomas included the TWC as the relevant state or local agency for dual filing purposes on his EEOC charge. *See* Dkt. 21-3 at 4. Because Thomas's religious discrimination claim cannot survive Link's 12(b)(6) motion for the reasons stated below, the court will assume, for purposes of the motion, that Thomas exhausted his administrative remedies on the claim.

### B.2.    Thomas fails to state a claim for religious discrimination.

To establish a prima facie claim for religious discrimination, Thomas must allege and prove: (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) his employer was informed of that belief; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. *See Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000). Put another way, in order "[t]o survive Rule 12(b)(6) for a claim of religious discrimination under Title VII, [Thomas] must plead that he suffered an adverse employment action because of his religious beliefs." *Chatmon v. W. Texas Counseling & Rehab.*, No. 3:14-CV-945-P, 2015 WL 13544782, at *3 (N.D. Tex. Dec. 1, 2015) (citing *Stone v. Louisiana Dep't of Revenue*, 590 F. App'x. 332, 339 (5th Cir. 2014), *appeal dismissed*, 688 F. App'x 291 (5th Cir. 2017). Furthermore, Thomas must support the allegation with facts that allow the court to make a reasonable inference that religious discrimination occurred.  *Id*.

Thomas has failed to allege a prima facie case of religious discrimination or any facts that would allow the court to make a reasonable inference of religious discrimination. He has not alleged any bona fide religious belief that conflicted with an employment requirement. He has not alleged any facts showing any adverse employment action by Link Staffing based on his Baptist religion. In fact, he makes only a passing reference to his religion in his amended complaint. Dkt. 22-1 at 3 ("The sex and religious discrimination . . . is derived from the homosexual behavior that

took place the first day I started to work at Grundfos . . ..).  Finally, he has not alleged that he complained to management about religious discrimination.  The court concludes that Link Staffing's motion to dismiss Thomas's Title VII religious discrimination and retaliation claims should be granted. *See Chatmon*, 2015 WL 13544782, at *4 (Granting 12(b)(6) motion to dismiss religious discrimination claim where pro se plaintiff failed to plead any facts linking his discharge to a religious-based discriminatory motive).

### C.      Race Discrimination and Retaliation under Title VII and Section 1981

#### C.1     Thomas's race-based discrimination claims.

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim of racial discrimination under Title VII without direct evidence of racial animus must first make out a prima facie case of discrimination. *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–14 (5th Cir. 2001). To establish a *prima facie* case, a plaintiff must show that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were treated more favorably. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016). An adverse employment action in the discrimination context refers to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Felton v. Polles,* 315 F.3d 470, 486 (5th Cir. 2002), *overruled on other grounds by Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Link Staffing first argues that Thomas fails to state race-based discrimination and retaliation claims because he does not allege his race. Thomas's African-American race is apparent from his TWC and EEOC charges, which are considered as part of his complaint for purposes of

this motion to dismiss. In addition, Thomas's Amended Complaint expressly corrects any deficit in this regard by identifying his race as African-American. Dkt. 22-1 at 1.

Link Staffing next argues for dismissal of the race-based discrimination claims because Thomas has failed to allege facts showing similarly situated employees outside his race were treated more favorably than he was treated. While Thomas's pleading is not well-organized, it is clear from the allegations that Thomas contends he was treated less favorably by Grundfos by being passed over for a permanent position because he is black and not "European-American." Thomas names John Kroll and "Todd" as European-American employees who were treated more favorably than he was in being selected to fill permanent positions. Dkt. 1 at 11. Thomas also alleges that "two European males were treated more favorably than Plaintiff" in regard to training. Dkt. 1 at 2. It is clear Thomas is alleging that as a joint employer, Link Staffing is also liable for that discriminatory conduct. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 229 (5th Cir. 2015) ("A staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control."). Although Thomas has not pleaded detailed facts demonstrating that the employees outside of his protected class that were treated more favorably were similarly situated to him, as a pro se litigant Thomas's pleading is entitled to a liberal construction, and the court makes all reasonable inferences in his favor at this stage of the proceedings. The court concludes that Thomas has sufficiently alleged the prima facie elements of a claim for racial discrimination against Link Staffing. Therefore, the motion to dismiss the race-based discrimination claim should be denied.

### C.2.    Thomas's race-based retaliation claims.

To present a prima facie case that he was retaliated against in violation of Title VII because he complained of race discrimination, a plaintiff must show that: (1) he engaged in protected activity, *i.e.*, complaining of discrimination; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). The definition of an adverse employment action in the retaliation context is broader than the definition used in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (noting that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is less demanding than an ultimate employment decision). An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Whether an action meets this standard is judged by the standard of a "reasonable employee," and will often depend upon the particular circumstances. *Id.* (quoting *Burlington*, 548 U.S. at 69); *Stringer v. N. Bolivar Consol. Sch. Dist.*, No. 17-60282, 2018 WL 1192999, at *7 (5th Cir. Mar. 7, 2018).

Link Staffing asserts that Thomas's race-based retaliation claim should be dismissed because Thomas does not identify any materially adverse action taken by Link Staffing in response to Thomas's alleged protected activity. However, Thomas alleges that Link Staffing retaliated against him by disciplining him for complaining to Grundfos, by joining with Grundfos in terminating his assignment, and by not giving him another assignment. These allegations meet the

minimum pleading standards for a retaliation claim and the motion to dismiss the retaliation claim should be denied.

### D. Thomas's sex discrimination/retaliation claims based on a hostile work environment.

#### D.1. Sex discrimination based on the alleged hostile work environment

Thomas's Amended Complaint, response to Link Staffing's motion to dismiss, and August 2016 Affidavit, make clear that he alleges a hostile work environment claim and not a traditional sex discrimination claim, or a *quid pro quo* sexual harassment claim. *See* Dkt. 22-1 at 3 ("The sex and religious discrimination, sexual harassment, and hostile work environment is derived from the homosexual behavior that took place the first day I started to work at Grundfos with the homosexual comments that were directed at me and that were made in my presence at others as well as the homosexual physical acts that I witnessed that were acted upon others."); Dkt. 25 at 4 ("Plaintiff['s] sex discrimination claims fall under the sexual harassment claim, from the constant and daily homosexual remarks and acts committed in front of Plaintiff and/or at Plaintiff."); Dkt. 1-2 at 4-5 ("It was just one homosexual story, gesture, and/or innuendo after another it is just the culture created by Grundfos, creating this hostile work environment."). Link Staffing argues that Thomas's complaint does not comply with Rule 8(a) regarding this cause of action because it is rambling, incoherent, and does not state a plausible claim for relief. The court agrees that Thomas has not alleged a plausible hostile work environment claim.

"The creation of a hostile work environment through harassment" is a form of discrimination prohibited by Title VII. *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.* 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Furthermore, the Supreme Court has held that same sex harassment is actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). An employer's liability under Title VII

for workplace harassment depends on the status of the harasser:  If the harassing employee is the victim's supervisor, and the victim proves the harassment resulted in a "tangible employment action," the employer is strictly liable. *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.,* 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). However, if the harasser is simply the victim's co-worker, the employer can be held liable only upon a showing that it was negligent in controlling the working conditions. *Id.* Thus, an employer's liability for its employee's harassing conduct can hinge on whether the harasser is a supervisor or simply a co-worker. *Id.*

A supervisor is someone "empowered by the employer to take tangible employment actions against the victim." *Id.* at 453. Thomas alleges harassing comments and actions by Jorge Sosa, his "zone leader," Terry Jalufkas, "the Lead," (Dkt. 1-2 at 4-5), and John Taylor (Dkt. 1 at 22). However, Thomas fails to plead any facts establishing that these men were his supervisors or empowered to make tangible employment actions with respect to him, such as hiring, firing or disciplining him. Having failed to plead any facts showing the alleged harassers were his supervisors, Thomas also fails to allege any facts showing that Link Staffing was negligent in controlling the working conditions that allegedly allowed co-workers to harass him.

Even assuming Thomas had alleged that the harassers were his supervisors, and Link Staffing could be held responsible for their conduct under a strict liability standard, Thomas has failed to plead facts to support the required elements of his claim.[5] In the context of a same-sex hostile work environment claim, the Fifth Circuit utilizes a two-step inquiry to evaluate first whether the alleged harassment was based on the victim's sex and, second, whether the conduct

---

[5] A hostile work environment claim based on a supervisor's conduct requires the plaintiff to plead and prove: (1) he belongs to a protected class; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on the protected characteristic [his sex]; and (4) the harassment affected a 'term, condition, or privilege' of employment." *Boh Bros.,* 731 F.3d at 453.

meets the severe and pervasive standards for a hostile-work-environment claim. *E.E.O.C. v.Boh Bros. Const. Co., L.L.C.,* 731 F.3d 444, 453 (5th Cir. 2013). Both elements must be met in order to impose liability on an employer. "For example, same-sex harassment that is 'severe or pervasive' enough to create a hostile environment might be excluded from the coverage of [T]itle VII because it was not discriminatory on the basis of sex." *Id.* On the other hand, "same-sex harassment that is indisputably discriminatory might not be serious enough to make out . . . [a] hostile environment claim." *Id.*

Thomas has failed to allege a crucial requirement of his same-sex hostile work environment claim--that the conduct was so objectively offensive as to alter the terms, conditions, or privileges of his employment. *See Boh Bros.*,731 F.3d at 455 (citing *Oncale* at 80-81). The severity and pervasiveness of the conduct are judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale* at 81. Thomas completely fails to allege that the terms of his employment were altered in any way as a result of the alleged same-sex harassment. He alleges that his assignment was terminated by Grundfos and disciplined by Link Staffing as a result of his complaints of racial discrimination. However, his only allegations regarding the effect of the alleged sexual harassment are that Sosa's comments "placed an image in [his] mind that he cannot get rid of," that he  is "subconscious about bending over at work and [incidentally] brushing up against other male employees at work, and that he "become[s] enraged" any time he hears Sosa's voice. Dkt. 1-2 at 4. He does not allege any physical, threatening, or menacing conduct. The physical acts he alleges in his initial Verified Complaint include other employees "groping each other," and "running things up the crack of each other buttock and on and on." Dkt. 1 at 22. Assuming the truth of these allegations, as the court must in this context, none of the alleged conduct rises to the standard of harassment that courts within the Fifth Circuit

generally find so severe and pervasive as to affect a term or condition of employment. *See, e.g., Gibson v. Potter*, No. 05-1942, 2007 WL 1428630, at *6 (E.D. La. May 10, 2007) (granting defendant's motion for summary judgment where male employee once grabbed plaintiff's buttocks, attempted to stick his tongue in her ear on several occasions, and solicited dates from plaintiff); *Hollins v. Premier Ford Lincoln Mercury, Inc*., 766 F.Supp.2d 736, 744 (N.D. Miss. 2011) (granting summary judgment on hostile work environment claim where plaintiff was cursed at several times, told that she needed to reward customer with sex for purchasing car from her, and was called a "bitch" same day her employment was terminated).

While Thomas's allegations paint of a picture of a crude and vulgar work culture, they are not enough to state a claim for a hostile work environment based on sexual harassment. *See Oncale*, 523 U.S. at 80 (Title VII is not a general civility code for the American workplace, regardless of whether opposite-sex or same-sex harassment is at issue). Thomas has failed to plead facts necessary to support a claim against Link Staffing for sex-based discrimination resulting from a hostile work environment and the claim should be dismissed.

### D.2.  Retaliation based on complaints about a hostile work environment

The same legal standards apply to Thomas's retaliation claim based on complaints of sexual harassment or hostile work environment as apply to his race-based retaliation claim. To make out a sex harassment/hostile work environment retaliation claim, Thomas must demonstrate that he engaged in protected activity by complaining about sexual harassment, that he suffered an adverse employment action, and that there is a causal link between the two. *See Hackett v. United Parcel Service*, No. 17-20581, 2018 WL 2750297, at *5 (5th Cir. June 6, 2018).

Thomas's Amended Complaint clearly alleges retaliation based on his complaints about *racial* discrimination (Dkt. 22-1 at 2-3, detailing racial discrimination and retaliation claim), but

makes no allegation of retaliation based on complaints of sexual harassment or a hostile work environment resulting from that harassment (Dkt. 22-1 at 3, detailing sex harassment and hostile work environment claim). The court concludes that Thomas has failed to state a plausible claim for retaliation for complaining of a sexually hostile work environment and recommends that this claim be dismissed.

## IV.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the court **RECOMMENDS** that Link Staffing's motion to dismiss with prejudice Thomas's claims for violation of Chapter 21 of the Texas Labor Code, age discrimination and retaliation, religious discrimination and retaliation, and hostile work environment sex discrimination  and hostile work environment retaliation should be **GRANTED**. Link Staffing's motion to dismiss Thomas's race discrimination and retaliation claims should be **DENIED.**

The court further **RECOMMENDS** that Thomas be ordered to file a Second Amended Complaint consistent with these rulings and compliant with Rule 8 of the Federal Rules of Civil Procedure within 14 days of entry of an Order of Adoption, if any, of this Memorandum and Recommendation and the Memorandum and Recommendation on Christie O'Brien's Motion to Dismiss.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 8608.

Signed on January 08, 2019, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge